# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT JOHNSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRESIDENT & FELLOWS OF HARVARD COLLEGE a/k/a HARVARD COLLEGE; and CEDRIC LODGE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

### **PARTIES**

1. Robert Johnson, (hereafter "Plaintiff") is an individual residing in Bradford, MA.

2. President & Fellows of Harvard College a/k/a Harvard College (hereafter "Defendant Harvard") is a Massachusetts Corporation and owns and operates Harvard Medical School ("HMS") which is located at 25 Shattuck Street Boston, MA. At all times relevant herein, Defendant Harvard owned, operated, and controlled HMS and the morgue located at 25 Shattuck Street Boston, MA.

3. Cedric Lodge, (hereafter "Defendant Lodge") was an employee of Defendant Harvard and worked at HMS and the HMS morgue. Based on information and belief, Defendant Lodge is an individual residing in Goffstown, New Hampshire.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1332 (a), this venue is proper over this lawsuit by way of diversity jurisdiction. Plaintiff is a resident of Massachusetts and Defendant Lodge is a resident of New Hampshire and thus satisfies the minimal diversity requirement.

5. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") and 28 U.S.C. § 1332(d)(2). The matters in controversy, exclusive of interest and costs, exceed the sum of $5,000,000.00 and there is diversity of jurisdiction.

6. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

7. Defendant Harvard advertises and promotes its Anatomical Gift Program through HMS and HMS's website.

8. As part of Defendant Harvard's Anatomical Gift Program, individuals are invited to donate their remains to HMS for the advancement of scientific and medical research of the human body.

9. The Anatomical Gift Program does not allow for the dissection and selling of individuals' remains.

10. After HMS has finished using the cadavers, the donor's remains are disposed of as elected on the Instrument of Anatomical Gift form and then returned to the donor's designee or family.

11. According to Defendant Harvard's website, "Options available at the present time are to reclaim the remains at the expense of the estate or family for private burial, or to request that HMS arrange for cremation. Cremated remains can be returned to the donor's designee, picked up by the donor's designee at HMS or buried at Pine Hill Cemetery, Tewksbury, Massachusetts, in a registered grave; *these options are available at the expense of HMS*" (emphasis added).

12. Defendant Harvard and HMS keep the donors remains at HMS for approximately 24 months.

13. At all times relevant herein, Defendant Lodge was an employee of Defendant Harvard and HMS.

14. Defendant Harvard and HMS document the identities of donated cadavers and maintain a database and records associated with each cadaver.

15. While in the course and scope of his employment, Defendant Lodge had access to the donor cadavers at HMS.

16. Defendant Harvard and HMS employees, were and are not permitted to remove, keep, or sell any human remains, including the donor cadavers, in whole or in part, belonging to a donated cadaver.

17. Defendant Lodge was not permitted to remove, keep, or sell any human remains, including the donor cadavers, in whole or in part, belonging to a donated cadaver.

18. Defendant Harvard and HMS employees were and are not permitted to desecrate the donor cadavers.

19. Defendant Lodge was not permitted to desecrate the donor cadavers.

20. Defendant Harvard and HMS employees were and are not permitted to use the donor cadavers beyond the scope of the intended purpose- which was the donation to HMS for the advancement of scientific and medical research of the human body, as promised by Defendant Harvard.

21. Defendant Lodge was not permitted to use the donor cadavers beyond the scope of the intended purpose- which was the donation to HMS for the advancement of scientific and medical research of the human body, as promised by Defendant Harvard.

22. At all times relevant herein, Defendant Lodge was employed as Morgue Manager at HMS and had access to the morgue and the donated cadavers stored in the morgue.

23. At all times relevant herein, Defendant Lodge, stole dissected portions of donated cadavers, including, for example, heads, brains, skin, bones, and other human remains without the knowledge or permission of Defendant Harvard or HMS.

24. Defendant Lodge removed the subject remains from the HMS morgue in Massachusetts and transported them to his residence in New Hampshire.

25. At all times relevant herein, Defendant Lodge, stole dissected portions of donated cadavers, including, for example, heads, brains, skin, bones, and other human remains and removed those remains from the morgue in Massachusetts and transported them to his residence in New Hampshire, all which was beyond and outside of the scope of Defendant Harvard's Anatomical Gift Program.

26. Defendant Lodge, while employed by Defendant Harvard and HMS, stole donated cadavers and unlawfully transported the cadavers interstate starting around 2018 through on or about August 16, 2022.

27. On or about June 13, 2023, Defendant Lodge was indicted by a Grand Jury in United States District Court Middle District of Pennsylvania for having committed the crimes related to his unlawful and reckless handling of the donated cadavers: (1) Conspiracy; and (2) Interstate Transport of Stolen Goods, Aid and Abet.

28. Defendant Harvard terminated Defendant Lodge's employment on or about May 6, 2023.

29. Plaintiff is the biological son of Anne Weaver who died on June 4, 2017.

30. Prior to her death, Anne Weaver arranged with Defendant Harvard and HMS to donate her body as part of the Anatomical Gift Program.

31. Anne Weaver's body was delivered to HMS shortly after her death.

32. Anne Weaver's cadaver was only to be handled in accordance with the Anatomical Gift Program's terms.

33. Upon information and belief, Anne Weaver's remains were one of the many donated cadavers mishandled and desecrated by Defendant Lodge as referenced throughout this complaint.

34. Based upon information and belief, between 350-400 donated cadavers may have been involved in Defendant Lodge's unlawful conduct and scheme.

35. Defendant Harvard and HMS owed a duty to the families of the donors, including the Plaintiff, to ensure that the donor's cadavers were only being used for medical research and study as set forth by the Anatomical Gift Program.

36. Defendant Harvard and HMS owed a duty to the families of the donors, including the Plaintiff, to ensure that its employees, including Defendant Lodge, were using the cadavers for medical research and study only.

37. Defendant Harvard and HMS owed a duty to the families of the donors, including the Plaintiff, to ensure that its employees, including Defendant Lodge, were not mishandling the donor's cadavers.

38. Defendant Harvard negligently handled the donor cadavers.

39. Defendant Harvard recklessly handled the donor cadavers.

40. Defendant Lodge negligently handled the donor cadavers.

41. Defendant Lodge recklessly handled the donor cadavers.

42. Defendant Harvard breached the contractual agreement with donors by allowing the donor cadavers to be mishandled and used beyond the scope of medical research and study as advertised and promised through Defendant Harvard's Anatomical Gift Program.

43. Defendant Harvard is liable for Defendant Lodge's acts by way of Respondeat Superior.

44. As a result of the actions and inactions of Defendant Harvard, Plaintiff and the Class Members have been harmed.

45. As a result of the actions and inactions of Defendant Lodge, Plaintiff and the Class Members have been harmed.

46. Plaintiff brings this class action on behalf of himself and all others similarly situated whose family members donated and entrusted their deceased bodies to Defendant Harvard as part of the Anatomical Gift Program for research and study, whose cadavers were then mishandled through the reckless conduct of Defendant Harvard's employee, Defendant Cedric Lodge.

47. The class shall be defined as:

    All parents, children, and siblings whose family members donated their deceased bodies to Harvard and HMS as part of the Anatomical Gift Program and were victims of Defendant Lodge's unlawful conduct and scheme.

48. The putative class is so numerous that joinder of all members would be impracticable, as it likely includes the family members of 350-400 donated cadavers.

49. It is likely that members of the class are located throughout multiple states.

50. Common questions of law and fact include whether the defendants are liable for: (a) negligence; (b) reckless infliction of emotional distress; (c) negligent supervision; (d) respondeat superior; (e) breach of contract; (f) unjust enrichment; and (g) tortious interference with remains.

## COUNT I
## NEGLIGENCE
**(Plaintiff and all others similarly situated v. Defendant Harvard)**

51. Plaintiff restates, realleges, and fully incorporates herein all prior paragraphs of this Complaint.

52. Defendant Harvard owed a duty of care to the families who entrusted it with the remains of their loved ones and to ensure that the cadavers were being properly and lawfully handled and maintained as part of the Anatomical Gift Program.

53. Defendant Harvard breached its duty of care by failing to take reasonable steps to ensure that the donated cadavers were being properly and lawfully handled and maintained as part of the Anatomical Gift Program.

54. As a direct and proximate cause of Defendant Harvard's negligent acts and omissions, Plaintiff and the putative class were caused to suffer injuries.

**WHEREFORE,** Plaintiff and the putative class request that judgment enter against Defendant Harvard for damages, costs, interest, and attorney's fees.

## COUNT II
## NEGLIGENCE
**(Plaintiff and all others similarly situated v. Defendant Cedric Lodge)**

55. Plaintiff restates, realleges, and fully incorporates herein all prior paragraphs of this Complaint.

56. Defendant Lodge owed a duty of care to the families who entrusted his employer, Defendant Harvard and HMS, with the remains of their loved ones and to ensure that the cadavers were being properly and lawfully handled and maintained as part of the Anatomical Gift Program.

57. Defendant Lodge breached his duty of care by improperly handling the donated cadavers.

58. Defendant Lodge breached his duty of care by selling remains and parts of the donated cadavers.

59. Defendant Lodge breached his duty of care by participating in an illegal scheme wherein he transported and sold cadaver parts for profit.

60. As a direct and proximate cause of Defendant Lodge's negligent acts and omissions, Plaintiff and the putative class were caused to suffer injuries.

**WHEREFORE,** Plaintiff and the putative class request that judgment enter against Defendant, Cedric Lodge for damages, costs, interest, and attorney's fees.

## COUNT III
## RECKLESS INFLICTION OF EMOTIONAL DISTRESS
**(Plaintiff and all others similarly situated v. Defendant Harvard)**

61. Plaintiff restates, realleges, and fully incorporates herein all prior paragraphs of this Complaint.

62. Defendant Harvard knew or should have known, that its negligent acts and omissions, would likely cause the family members of those who donated their remains through the Anatomical Gift Program, to suffer emotional distress.

63. Defendant Harvard's conduct was extreme and outrageous and said conduct caused the family members of those who donated their remains through the Anatomical Gift Program, to suffer severe emotional distress.

64. As a direct and proximate cause of Defendant Harvard's negligent acts and omissions, Plaintiff and the putative class suffered reckless infliction of emotional distress.

65. As a direct and proximate cause of Defendant Harvard's negligent acts and omissions, Plaintiff and the putative class suffered severe emotional distress.

**WHEREFORE,** Plaintiff and the putative class request that judgment enter against Defendant Harvard College for damages, costs, interest, and attorney's fees.

## COUNT IV
## RECKLESS INFLICTION OF EMOTIONAL DISTRESS
**(Plaintiff and all others similarly situated v. Defendant Cedric Lodge)**

66. Plaintiff restates, realleges, and fully incorporates herein all prior paragraphs of this Complaint.

67. Defendant Lodge knew or should have known, that his conduct, would likely cause the family members of those who donated their remains through the Anatomical Gift Program, to suffer emotional distress.

68. Defendant Lodge's conduct was extreme and outrageous and said conduct caused the family members of those who donated their remains through the Anatomical Gift Program, to suffer severe emotional distress.

69. As a direct and proximate cause of Defendant Lodge's conduct, Plaintiff and the putative class suffered reckless infliction of emotional distress.

70. As a direct and proximate cause of Defendant Lodge's negligent acts and omissions, Plaintiff and the putative class suffered reckless infliction of emotional distress.

**WHEREFORE,** Plaintiff and the putative class request that judgment enter against Defendant, Cedric Lodge for damages, costs, interest, and attorney's fees.

## COUNT V
## NEGLIGENT SUPERVISION
**(Plaintiff and all others similarly situated v. Defendant Harvard)**

71. Plaintiff restates, realleges, and fully incorporates herein all prior paragraphs of this Complaint.

72. As Defendant Lodge's employer, Defendant Harvard owed a duty of care to the families who entrusted it with the remains of their loved ones and to ensure that

the cadavers were being properly and lawfully handled and maintained by its employees, including Defendant Lodge, as part of the Anatomical Gift Program.

73. As Defendant Lodge's employer, Defendant Harvard breached its duty of care by failing to take reasonable steps to ensure that the donated cadavers were being properly and lawfully handled by its employees, including Defendant Lodge, and maintained as part of the Anatomical Gift Program.

74. Defendant Harvard had a duty to supervise Defendant Lodge.

75. Defendant Harvard negligently supervised Defendant Lodge.

76. As a result of Defendant Harvard's negligent supervision, Defendant Lodge dissected and sold parts of the cadavers donated to HMS.

77. As a direct and proximate cause of Defendant Harvard's negligent acts and omissions, Plaintiff and the putative class were caused to suffer injuries.

**WHEREFORE,** Plaintiff and the putative class request that judgment enter against Defendant Harvard College for damages, costs, interest, and attorney's fees.

## COUNT VI
## RESPONDEAT SUPERIOR
**(Plaintiff and all others similarly situated v. Defendant Harvard)**

78. Plaintiff restates, realleges, and fully incorporates herein all prior paragraphs of this Complaint.

79. At all relevant times herein, Defendant Harvard employed Defendant Lodge.

80. Any act(s) of negligence of Defendant Lodge are imputed to Defendant Harvard through the doctrine of *respondeat superior.*

**WHEREFORE,** Plaintiff and the putative class request that judgment enter against Defendant Harvard for damages, costs, interest, and attorney's fees.

## COUNT VII
## BREACH OF CONTRACT
### (Plaintiff and all others similarly situated v. Defendant Harvard)

81. Plaintiff restates, realleges, and fully incorporates herein all prior paragraphs of this Complaint.

82. As part of its Anatomical Gift Program, Defendant Harvard induced members of the public, to donate their bodies to HMS for the advancement of scientific and medical research of the human body.

83. Members of the public had to sign the Instrument of Anatomical Gift contract.

84. It was understood that by donating their bodies to HMS, that Defendant Harvard and its agents, employees, and servants, would properly and lawfully handle the cadavers and that parts of the cadavers would not be sold to third parties.

85. According to the Instrument of Anatomical Gift contract, Defendant Harvard and HMS, would cover the expense of cremation and burial at the Pine Hill Cemetery in Tewksbury, MA.

86. Defendant Harvard breached the Instrument of Anatomical Gift contract by allowing its employee, Defendant Lodge, through its actions and inactions, to take possession of the cadavers and sell them to third parties.

87. As part of its Anatomical Gift Program, Defendant Harvard induced members of the public, to donate their bodies to HMS for the advancement of scientific and medical research of the human body.

88. Members of the public had to sign the Instrument of Anatomical Gift contract.

89. It was understood that by donating their bodies to HMS, that Defendant Harvard and its agents, employees, and servants, would properly and lawfully handle the cadavers and that parts of the cadavers would not be sold to third parties.

90. Defendant Harvard, by way of the actions of its employee, Defendant Lodge, violated the express consent given by members of the public who donated their bodies to HMS as part of the Anatomical Gift Program.

91. As a result of Defendant Harvard's breach of contract, Plaintiff and members of the class suffered damages.

92. As a result of Defendant Harvard's breach of the contract the remains of donated cadavers were not properly returned and/or cremated.

**WHEREFORE,** Plaintiff and the putative class request that judgment enter against Defendant Harvard for damages, costs, interest, and attorney's fees.

### COUNT VIII
### UNJUST ENRICHMENT
**(Plaintiff and all others similarly situated v. Defendant Lodge)**

93. Plaintiff restates, realleges, and fully incorporates herein all prior paragraphs of this Complaint.

94. Defendant Harvard breached the Instrument of Anatomical Gift contract by allowing its employee, Defendant Lodge, through its actions and inactions, to take possession of the cadavers and sell them to third parties.

95. Defendant Lodge sold the cadavers for financial gain.

96. Defendant Lodge has been unjustly enriched at the expense of the plaintiff and members of the class.

WHEREFORE, Plaintiff and the putative class request that judgment enter against Defendant Lodge for damages, costs, interest, and attorney's fees.

## COUNT IX
## TORTIOUS INTERFERENCE WITH REMAINS
**(Plaintiff and all others similarly situated v. Defendant Harvard and Defendant Lodge)**

97. Plaintiff restates, realleges, and fully incorporates herein all prior paragraphs of this Complaint.

98. The Plaintiff and the Class, as next of kin of the subject decedents, had and/or have a personal quasi-property right to control the handling and disposition of the remains of their loved ones.

99. Defendants had a duty to comply with the Plaintiff's, the decedent's, and/or the Class Members' express wishes.

100. Defendant had an opportunity to comply with the express wishes of Plaintiff, the decedents, and/or Class members.

101. Defendants interfered with the rights and responsibilities of the Plaintiff, decedents, and/or Class Members regarding proper handling and disposition of their departed loved one's remains.

102. Defendants' behavior was a gross dereliction of their duties.

103. Defendants interfered with Plaintiff, and Class Members from exercising their rights and performing their responsibilities of appropriately handling, caring for, and disposing of the remains of their loved ones.

104. As a direct, know, foreseeable, and proximate cause of Defendants' negligence and its reckless disregard of the consequences, as well as Defendants' intentional choices described herein, the remains entrusted to Defendant Harvard were

grossly mistreated and Plaintiff and the Class reasonably and expectedly suffered serious injury including severe emotional distress.

**WHEREFORE,** Plaintiff and the putative class request that judgment enter against Defendant Harvard and Defendant Lodge for damages, costs, interest, and attorney's fees.

### PLAINTIFF AND THE CLASS REQUEST A TRIAL BY JURY ON ALL COUNTS

Respectfully Submitted,
The Plaintiffs,
By their Attorneys,

*/s/ Kevin J. McCullough*
Kevin J. McCullough
BBO# 644480
Michael C. Forrest
BBO# 681401
Robert J. Hartigan
BBO# 697304
Kathryne D. Masson
BBO# 708406
Mazow | McCullough, PC
10 Derby Square, 4th Floor
Salem, MA 01970
Phone (978) 744-8000
Fax (978) 744-8012
kjm@helpinginjured.com
mcf@helpinginjured.com
rjh@helpinginjured.com
kdm@helpinginjured.com

Dated: July 14, 2023